```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND

CHARLES DEAN HANEY,                *
Individually, and as Personal
Representative of the Estate of    *
Charles Ambrose Haney, et al.,
                                   *
              Plaintiffs
                                   *
         vs.                            CIVIL ACTION NO. MJG-12-1396
                                   *
3M COMPANY, et al.,
                                   *
              Defendants
                                   *
*    *    *    *    *    *    *    *    *
```

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT [CRANE CO.]

The Court has before it Defendant Crane Co.'s Motion for Summary Judgment As to All Direct Claims, Cross-Claims, and Third-Party Claims [Document 847] and the materials submitted relating thereto. The Court finds a hearing unnecessary.

I.   BACKGROUND

On February 8, 2012, Charlie Ambrose Haney ("Haney") filed the instant lawsuit in the Circuit Court for Baltimore City, Maryland against eighty-four Defendants (one of which was Defendant Crane Co.) alleging damages due to exposure to asbestos. On May 8, 2012, the case was removed to this Court based upon the federal officer removal provision, 28 U.S.C. § 1442(a)(1).

Haney died on July 1, 2012 from malignant mesothelioma caused by exposure to asbestos. On October 13, 2013, Plaintiffs Charles Dean Haney, individually and as personal representative of the Estate of Haney, Jeffrey William Haney, and John Henry Haney (collectively "Plaintiffs"), filed the First Amended Complaint against fifty-six Defendants (one of which was Crane Co.) asserting claims in five Counts. Claims in three Counts remain pending[1] against Crane Co.:

    Count I      Strict Liability

    Count III    Negligence

    Count V      Wrongful Death

By the instant Motion, Crane Co. seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[1] In the Order Granting Summary Judgment Motions [Document 948], the Court granted summary judgment to Crane Co. on Count II (Breach of Warranty), [Document 850], and Count IV (Aiding and Abetting and Conspiracy), [Document 853]. The Court also granted summary judgment to Crane Co. on Plaintiffs' claims for punitive damages, [Document 854].

II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her."  Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).  However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact."  Int'l Waste Indus. Corp. v. Cape

3

Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013); see also Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

III. DISCUSSION

Crane Co. contends that Plaintiffs have failed to present admissible evidence sufficient to permit a reasonable jury to find that Haney was exposed to asbestos from any product for which Crane Co. is liable.

In their Response to the instant Motion, Plaintiffs state generally that "Haney was exposed to asbestos while serving as a machinist in the U.S. Navy and while working as a machinist during the new construction of naval and merchant ships at the Bethlehem Steel Sparrows Point Shipyard." [Document 923] at 1-2. Specifically as to Crane Co., Plaintiffs state:

> During his service in the U.S. Navy, Mr. Haney installed and removed "hundreds and hundreds" of Crane Co. [Cranite] asbestos-

4

>  containing sheet packing gaskets ("asbestos gaskets") while serving aboard the USS Breckinridge from 1951 to 1955 as a machinist mate.

Id. at 1.

Accordingly, the claims against Crane Co. are based solely upon alleged exposure to asbestos-containing sheet packing material supplied by Crane Co. in connection with Mr. Haney's service aboard the USS Breckinridge between 1951 and 1955.[2]

In their Response to the instant Motion, Plaintiffs state:

> [T]here is direct evidence from Mr. Haney that he worked with Crane Co. asbestos-containing gaskets on hundreds of occasions in circumstances that created visible dust. In addition, there is ample testimony from Mr. Haney that he worked with asbestos-containing Crane sheet packing gaskets on hundreds of occasions and used a wire brush, which created visible dust in the air.

[Document 923] at 9 (internal citation omitted).

Plaintiffs' contentions regarding the Crane Co. valves and gaskets on which Haney worked on the USS Breckinridge are based upon allegations that the sheet packing used to protect the

---

[2] Crane Co. asserts in the Motion that it "is not liable for asbestos-containing products that it neither manufactured, nor supplied that were associated with any Pacific steel boiler or Crane valves."  See [Document 903] at 17-18.  In their Response, Plaintiffs do not present any contention or evidence relating to the Pacific boiler.  Moreover, in the Order Granting Unopposed Summary Judgment Motion, [Document 950], the Court granted Crane Co.'s Motion for Partial Summary Judgment on All Claims Relating to Exposure to Asbestos-Containing Products Crane Co. Neither Manufactured Nor Supplied, [Document 848].

5

gaskets and valves was Cranite sheet packing (gasket material) supplied by Crane Co.[3] See [Document 923] at 3-6, 9-12.

Crane Co. states in its Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment:

> At no time did Crane Co. ever manufacture "Crane" brand packing material, sheet gasket material, or pre-formed gaskets. <u>It is well-known in asbestos litigation that valves identified with the name "Crane" are Crane Co. products, whereas packing and gaskets identified with the name "Crane" are products manufactured by John Crane Inc., an entirely separate and distinct company.</u> Misidentification of valves as "John Crane" products or packing and gaskets as "Crane Co." products frequently occurs. <u>However, it is well-understood by attorneys on both sides of the bar, as well as by courts that routinely handle asbestos matters, that these are two separate entities that manufactured entirely distinct products.</u>

[Document 903] at 3 n.1 (emphasis added).

### A. The Proffered Evidence

The only proffered evidence referring to alleged exposure of Haney to Cranite, a product svgupplied by Crane Co., rather than to a John Crane, Inc. product, is provided by testimony from Haney that the Court finds inadmissible in evidence.

---

[3] Cranite sheet packing was supplied, but not manufactured, by Crane Co.

In his discovery deposition on May 9, 2012, Haney referred to "Crane" products but did not distinguish between Cranite supplied by Crane Co. and John Crane, Inc.'s products.

Questioning by counsel for Crane Co.:

> Q. Do you know the brand name or manufacturer of the packing that you would have used while working in the distilling plant on the Breckenridge as a third class machinist mate?
> . . . .
> A. Well, I will say that you got – you get Crane packing.
> Q. Okay.
> A. You got sheet.
> . . . .
> A. It was Crane packing.
> Q. Was the – was Crane the manufacturer of the packing?
> A. I'd say it was because spools of it would be that a big around (indicating) according to the diameter of the rope we will call it.
> . . . .
> A. All the other trade names I can't remember. Biggest part on there is just what I got through saying.
> Q. Crane?
> A. Crane.

Haney Disc. Dep. May 9, 2012, 86:16-88:2, 91:6-21.

> Q. Okay. And the <u>packing material that you talked about, were there other brands that you used besides Crane</u>?
> A. <u>Not to my know – knowledge</u>.

<u>Id.</u> 95:10-13 (emphasis added).

> Q. Did you say the valves were manufactured by Crane or were you talking about the packing?
> A. The valves was Crane.

Id. 163:18-21.

> Q. I guess – just why don't you describe that packing-gland material. Just describe it.
> . . . .
> A. It's sheets, different sizes. You cut it to fit the flange that you are going to seal the leak off.
> . . . .
> Q. And do you know who made the – the – was there any names on that material?
> A. Crane.
> Q. Okay. Were there any other names on that material?
> A. Lordy. Let's see. I didn't know that's my – again, they wasn't – they wasn't –
> . . . .
> Q. I mean, it was a packing – you called it a packing material, right?
> . . . .
> Q. Sheet packing.
> A. Yeah, sheet packing.

Id. 175:2-177:15.

Later that day, questioning by counsel for John Crane, Inc.:

> Q. Mr. Haney, could you describe the writing that you testified that you saw on the sheet packing?
> MR. PALMIOTTO (then-counsel for Crane Co.): Objection.
> . . . .
> A. I have seen Crane.
> Q. Sir, do you know was there any – could you describe the style of the lettering that you saw on the sheet packing?
> . . . .
> Q. Was it in block writing do you recall?
> . . . .

> A. <u>Print. First letter was bigger. And it got smaller as it come – come – come on out to Crane</u>.

Id. 210:5-211:8 (emphasis added).

In evidence – from Plaintiffs – is a picture of Cranite sheet packing material from Crane Co.'s 1953 catalog. See [Document 923-3]. The sheet packing in the picture contains the name "Cranite" in large, uniform capital letters and the name "Crane" below it in smaller, uniform capital letters. Id. This picture is not consistent with Haney's description of the lettering that he said he observed.

The next day, May 10, 2012, during discovery deposition questioning, Haney was led by his counsel and answered, over objections to leading by Crane Co.'s counsel, to state the name "Cranite."

> Q. (by Plaintiff's counsel): You were asked how you – you knew it was Crane sheet packing yesterday. And you said it – it said – you remember the name Crane. And you – you said there was also another name and you were having trouble remembering it. Do you remember what that name was?
> . . . .
> A. Do I remember the name of the – the packing?
> Q. <u>No. You – you identified today and – and yesterday Crane sheet packing. And you were asked a bunch of questions. And at one point you said – you thought there was another name that went with the Crane sheet packing. Do you remember today what that was?</u>
> . . . .

> A. <u>You would – I will – I will say no.</u>
> Q. <u>Okay. Have you ever heard of Cranite?</u>
> MR. PALMIOTTO: Objection to the form. Leading.
> A. <u>Right.</u>
> Q. <u>Have you heard of – is that the name you were thinking of?</u>
> MR. PALMIOTTO: Objection to the form. Leading.
> A. <u>That is right.</u>

Haney Disc. Dep. May 10, 2012, 374:6-376:4 (emphasis added).

This was followed by questioning from counsel for Crane Co.

> Q. I just have a few follow-up questions based on what your – your attorney, Mr. Kiely, had asked you about the packing and primarily the sheet packing material which I believe, my understanding from your testimony, that you would use between flanges.
> A. True.
> Q. All right. <u>Mr. Kiely suggested a name to you by the name of Cranite. And it's my understanding you just simply could not remember that name before he led you into that, before he suggested that to you, correct?</u>
> . . . .
> A. <u>Correct.</u>
> Q. Okay. And in fact, <u>I am looking through your Exhibit 3, which is your handwritten notes, and I don't see that name anywhere</u> on here; is that correct? You can look at it, but I might have missed it, but I don't see it anywhere. <u>Am I missing it?</u>
> A. <u>I don't believe so.</u>
> MR. KIELY: I didn't see it either.

<u>Id.</u> 383:19-385:3 (emphasis added).

In his <u>de bene esse</u> deposition,[4] held on May 24, 2012, Haney was again questioned about the sheet packing material.

> Q. (by Plaintiff's counsel):  Now, let's shift gears. You started talking about these – the sheet packing that you would fabricate. Now, in your discovery deposition, you described two kinds of sheet packing. One was pre-made. It was prefabricated, and it would fit on. And the other was a sheet, and you would have to make it yourself; is that right?
> . . . .
> A. That is the packing. That is the – that is the -nite.
> Q. Right. What is it called?
> A. Cranite.
> . . . .
> Q. Was the Cranite the sheet packing?
> A. Sheet packing, yes.
> Q. When you would – when you would fabricate the Cranite sheet packing, can you describe how you did that?
> A. Scrape it off. Some of it wouldn't come off, you use and electric wire brush whatever and grind it off.
> . . .
> Q. All right. And how often do you think you did that during your –
> A. Hundreds of times.

Haney <u>De Bene Esse</u> Dep. May 24, 2012, 34:6-35:19.

---

[4] The United States Court of Appeals for the Fourth Circuit has stated that "[t]he Federal Rules of Civil Procedure make no distinction for use of a deposition at trial between one taken for discovery purposes and one taken for use at trial (<u>de bene esse</u>)."  <u>Tatman v. Collins</u>, 938 F.2d 509, 510-11 (4th Cir. 1991).  The court explained that "Fed.R.Civ.P. 32 provides that a deposition may be offered at trial, subject to the rules of evidence, as though the witness were present and testifying . . . . It is irrelevant . . . that [the deposition] was initiated only for discovery purposes, or that it was taken before other discovery was completed."  <u>Id.</u> at 511.

B.   <u>The Evidence Is Inadmissible</u>

"On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial." <u>Solis v. Prince George's Cnty.</u>, 153 F. Supp. 2d 793, 798 (D. Md. 2001).

Rule 611(c) of the Federal Rules of Evidence states:

> Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:
> (1)   on cross-examination; and
> (2)   when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

The United States Court of Appeals for the Fourth Circuit has explained:

> The essential test of a leading question is whether it so suggests to the witness the specific tenor of the reply desired by counsel that such a reply is likely to be given irrespective of an actual memory. The evil to be avoided is that of supplying a false memory for the witness.

<u>United States v. Durham</u>, 319 F.2d 590, 592 (4th Cir. 1963).

"The right of a cross-examiner to employ leading questions is not absolute under Rule 611(c).  If the witness is friendly to the examiner, there is the same danger of suggestiveness as on direct; and consequently the court may, in its discretion, forbid the use of leading questions."  <u>Morvant v. Constr. Aggregates Corp.</u>, 570 F.2d 626, 635 n.12 (6th Cir. 1978).

12

"Generally, when a witness identified with an adverse party is called, the roles of the parties are reversed. Leading questions would be appropriate on direct examination but not on cross-examination."[5]  Alpha Display Paging, Inc. v. Motorola Commc'ns & Elecs., Inc., 867 F.2d 1168, 1171 (8th Cir. 1989).  Ultimately, however, "the extent to which the use of leading questions may be indulged or limited is a matter primarily for the discretion of the trial judge."  Durham, 319 F.2d at 592.

The Court finds that, in the context of his counsel's questioning, the inquiry that resulted in Haney stating the name "Cranite" was impermissibly leading, suggesting the desired answer.  See, e.g., Powell v. State, 995 P.2d 510, 530 (Okla. Crim. App. 2000) ("[T]he prosecutor asked, 'Have you ever heard hard shifting automatics before?' This was obviously asked in order to get Smith to say yes, thereby suggesting the car Smith had identified could have been an automatic rather than a standard shift. This was an improper leading question."); see also Bishop v. Peppertree Resorts, Ltd., 212 F. Supp. 2d 518, 523-24 (W.D.N.C. 2002) ("The Plaintiff offers only one piece of

---

[5]   But see "While Federal Rule of Evidence 611(c) permits the use of leading questions when a party calls a witness identified with an adverse party, there is no complementary provision requiring such a witness to be cross-examined without the use of leading questions by the party to whom that witness is friendly."  Morvant v. Constr. Aggregates Corp., 570 F.2d 626, 635 (6th Cir. 1978).

13

evidence from his deposition as direct evidence of discrimination. However, that evidence is not admissible. . . . Plaintiff points to the following exchange: 'Q: [By Bishop's Attorney]: During the time that you worked there, did anyone make any statements to you about you were too old?  A: Earl Wallace . . . called me spacey. I took that as absent minded, maybe- Q: Meaning you were too old?  A: Too old.'  This exchange is a textbook example of leading a witness.  Under the Federal Rules, a plaintiff's attorney is not permitted to lead the plaintiff. . . . Thus, the Plaintiff has presented no admissible, direct evidence of discrimination." (internal citations omitted)).

Plaintiffs contend that a reference in Haney's deposition testimony to "Ike" referred to "Cranite." See [Document 923] at 10 n.6.  However, Haney's attorney – with ample opportunity to do so – did not in any way seek to have Haney so testify during his discovery or de bene esse depositions.  Moreover, Haney's deposition testimony indicates that when Haney mentioned "Ike," he referred to something other than just sheet packing material.

> Q. Okay.  Do you know the brand name or manufacturer of that gasket material?
> A. Well, one of it was a Ike- Ike (phonetic).
> MR. KIELY (counsel for Haney): Ike?
> MR. BRISKER: That's what I heard.
>
> . . . .

>           Q.  The gaskets that were premade by
>               factory, do you know the brand name or
>               manufacturer of those gaskets?
>           A.  Oh, that was a Gill (phonetic).  Not
>               Gill, but – yeah, that was Ike
>               (phonetic).
>           Q.  Okay.
>           A.  That was– that was Ike (phonetic).  Who
>               could not forget Ike?
>
>           . . . .
>
>           Q.  Okay.   And the ceilings of the—the
>               Breckenridge that were insulated, do you
>               know the brand name or manufacturer of
>               that insulation material?
>           MR. KIELY:  Objection. Go ahead.  You can go
>               ahead and answer his question.
>           THE WITNESS:  Oh, okay.  It – it was the –
>               it was asbestos.  It was Ike– Ike-type
>               (phonetic) insulation.  I mean, I am no
>               specialist.

Haney Disc. Dep. May 9, 2012, 110:2-7, 117:1-8, 150:8-18.

The "bottom line" is that Plaintiffs have presented no evidence admissible at trial adequate to prove that Haney was exposed to asbestos in any product for which Crane Co. is liable.

15

IV. CONCLUSION

For the foregoing reasons, Defendant Crane Co.'s Motion for Summary Judgment As to All Direct Claims, Cross-Claims, and Third-Party Claims [Document 847] is GRANTED.

SO ORDERED, on Thursday, July 16, 2015.

                              /s/___   __ _
                         Marvin J. Garbis
                     United States District Judge